May it please the Court, I'm Karen Landau and I represent the appellant. This case really presents – there are several arguments presented, but it really comes down to two issues. One, whether the Court committed procedural error in imposing sentence, and if so, whether that requires a remand. Alternatively, there is a substantive unreasonableness argument, which I will address later. In this case, there were several – there were two procedural errors. One involved imposing sentence based on clearly erroneous facts, and the second involved restricting the burden of proof. The clearly erroneous facts are addressed in the brief, and rather than go through them, I would just like to point out to the Court that the clearly erroneous facts were significant. One involved a statement that is in the pre-sentence report and which was repeated by the district court in imposing sentence, was that Mr. Garner had paid restitution in the Northern District of Florida using fraudulently obtained funds, which was specifically refuted by the defense. And the district court, I guess, was relying on the interview with the postal inspector.  Yes. Where when the postal inspector asked Garner, he said, why did you do it, basically? And he said, well, I had a large obligation to pay restitution, and as a result, he had to do whatever he could to obtain money or assets, and that's why he filed false documents to obtain these assets. So there certainly was some evidence in the record supporting the district court's determination, the statement by Garner himself in response to the inspector. So why did the – so given our Hinkson standard that it was illogical, implausible or without support in the record, it seemed like there was some support in the record for that conclusion. I think that that conclusion depends on an inference which is itself refuted by more persuasive evidence. The government made that argument, of course, and – but I think the difficulty is that when one reads the interview, you see that Mr. Garner said, well, it was a – he essentially said it's a motivating factor, that's why I did it. But that's quite different from proof that he actually paid the restitution, you know, in other cases with fraudulently obtained funds. And – Well, let's – let's say you're correct. To me, you have a more difficult problem, which is you have to show that the district court specifically relied on this information in making its determination, don't you? Well, I don't – I don't think so, Your Honor. But even if I did, that's showing it's apparent in the record. The court – The district court said that it was – it reviewed it for background and context. Yes, he did. But then – but then later, and this is at ER 46, he – he – he referenced it – he references it specifically right before he imposed his sentence. And he also stated in imposing sentence that he was relying on the totality of the circumstances, which includes this error among the others that are referenced in the brief. But it did seem – I mean, he made that reference, but then that was a single reference in like a 25-page narrative, and the district court was clearly relying on the fact that – that Mr. Garner immediately resumed his fraudulent activities after getting out on supervised release. That was clearly the – the thrust of the district court. So it seemed to me, even if there was a mention of it, and even if we said it wasn't supported by the record, why wouldn't that be a harmless error? Well – well, again, two reasons. Again, I – first of all, the court overruled the objection erroneously. And then the court referenced it shortly before pronouncing sentence. In addition, this was such a tremendous upward departure, it was a 300 percent upward departure from a high end of the guideline range of 30 months to a sentence of 90 months. What did – what was the real concern of the district judge? The real concern, he indicated, was he went right back into business after a very substantial prior sentence. Well – I can see as a former district judge where that might be of concern to me if I believed that his intent or actual fact was that he hadn't learned his lesson. How do you take that language? Well, certainly, Your Honor, the district court had – that was – that was part of the district court's concern. The question, though, one of the questions for the court is whether that concern alone justifies the 300 percent upward departure. That's the reasonableness argument. Well, that's the reasonableness argument, but it also goes back to whether the procedural error is harmless. Now, perhaps we would have a weaker – if the judge had departed upwards, say, 10 months or 12 months or even 20 months, maybe the argument would be weaker. But I think given that, A, the court says I'm relying on the totality of the circumstances, he specifically adopts erroneous – these erroneous facts. And then he departs upward. You say he specifically adopts them? Yes, he adopted the statement in the pre-sentence report. He specifically said I – Where is that in the record? There were a couple of places, but one is where he overrules the objections. And I – He made a comment during the time period that he was discussing the pre-sentence report. I'm not sure that was an adoption. Is that your view? It is. And then later, I think actually if you go to ER and it begins – it begins at – he says – he says at ER 43, beginning at 43 and going through 46, 47, he says, I want to read portions from his pre-sentence report because I adopt these as sentencing justifications and reasons for the sentence. And among those, of course, is this – this statement, the defendant including – and he's used proceeds from the incident offenses to pay restitution in the Northern District of Florida. He says that. So, yes, the court did adopt – I mean, he said he adopted it. So it isn't something the court said specifically. You're relying upon his adoption of the pre-sentence report, which has the comment. Right. And not only does he do that – not only does he do that, he does that right before when he's announcing the formal – he went through a litany of – he said a lot – as I said, he did have a long – he made a fairly lengthy – the judge made a fairly lengthy statement. But at the end, he sets forth his justifications for the sentence, and that is one of them. Well, what part of it is not his statement but his adoption of the pre-sentence report? Yes, Your Honor, although I would say that's a distinction without a difference. Do you really? Some of those pre-sentence reports are very long, and district court judges, at least when I was one, just said we adopt it. But somebody asked me about some of the specific language in it, that there was an objection specifically to the pre-sentence report, like, wait a minute, Your Honor, this statement is mistaken. Then I think if he didn't strike it or say he's not going to rely on it, you'd have a stronger point. But, Your Honor, in this case, that's exactly what happened, because that language was objected to, and the court overruled the objection. So I would say that that fits exactly within your analogy. What's the case you rely upon most heavily for the proposition that even taking the facts as you allege them, that that is improper and that the court cannot do that in taking into account the, in quotes, totality of the circumstances in making his ruling? Well, I think Rassam is the best case, because that is a case in which his court found there was procedural error because the district judge overvalued the cooperation and didn't pay enough attention to what the government said about the value of the defendant's cooperation. And it was sort of the inverse of this case, because the court imposed a third of the guideline, the low end of the guideline sentence. Of course, here it's 300 percent, but essentially that is the best analogy. If the Court has no further questions, I'd like to save my minute and ask. Thank you. Okay. We'll hear from the government. The other part of the government. Thank you both for being here, by the way. Yeah. Thanks for obeying our order. I was just going to say, good morning, please, the court, good morning, counsel. Elizabeth White for the government, appearing pro bono. Yeah. We all hope that things will work out very well. We cannot confer Article III status on you, but we very much appreciate the efforts of you both. Thank you so much. If we just cut to the chase here, I think that there are three things that we absolutely know to be true. One is we know to be true from reading the 25-page explanation of sentence. I mean, Judge Hicks went for 25 pages explaining why he was imposing the sentence that he imposed, and it is absolutely clear why he imposed the 90-month sentence, because this defendant, having been released from a 5-year prison term for this exact type of fraud, he got out in late July 2009, and by early August 2009, less than two weeks later, he is committing the same fraud, the same kind of fraud, against some of the same victims that he had just served 5 years in prison for. Judge Hicks said this was outrageous. He'd never seen he'd presided over a thousand cases, and he'd never seen anything like this before. This just – and 60 months, if 60 months isn't going to teach you a lesson, clearly 60 months didn't teach you a lesson, so we're going to go to 90 and see if that teaches you that you cannot commit this particular crime again. So the first thing we know is why the judge imposed the sentence that he did. The second thing we know is to the extent that there were – that in the course of ruling on – I mean, she filed a 24-page defense – trial counsel filed this very lengthy objection to PSRs – to the PSR, objecting to numerous sentences – sentences throughout the PSR. The judge ruled on all of them. To the extent that any errors remained in the PSR – and I do think that there probably were three that remained in the PSR, or at least think that we had not brought enough evidence to support – to the extent that there are procedural errors, one thing we know for sure is that if this Court were to remand this case for resentencing and tell Judge Hicks you have to cross out those three sentences and resentence again, he would cross out those three sentences and he would sentence the defendant to 90 months in prison, because that's the sentence that he thinks this defendant deserves. And the third thing that I think we know for sure is that when that 90-month sentence comes up on appeal, this Court is going to affirm it as reasonable. So what we're struck here with is to the extent that there are any errors in the PSR, this is why we have the harmless error analysis. It is a rule of judicial efficiency. What it says is, are we really going to – because there might be a procedural error here, because there might remain a couple of misstatements in the PSR, are we really going to send this back, bring the defendant in, bring the lawyers in, do the whole hearing over again? When we know, when we are 100 percent certain, and all you have to do is read this 25 pages of transcript, we are 100 percent certain, that at the end of the day, Judge Hicks would resentence this defendant to 90 months and that sentence would be a reasonable sentence. Kennedy. What case can we rely upon for the concept that this type of error, if it – if error B is harmless? Well, you know, Cruz-Gramajo said that – and Cruz-Gramajo quoting – is a Ninth Amendment case. Remand is not necessary if the reviewing court concludes on the record as a whole that the error was harmless, i.e., that the error did not affect the district court's selection of the sentence imposed. Now, Cruz-Gramajo was a guidelines calculation case, but – but frankly, I would think that when what you've got is sort of a couple of random sentences in the factual narrative of the PSR, it's even – it's even a stronger case there. The judge did correctly calculate the guideline range. There's no – there's no challenge to the court's calculation of the guidelines range. So the guideline range was 24 to 30 months. The judge looked at this defendant and said, you know, the district – northern district of Florida gave you 60 months, which was an upward departure in 2004. Gave you 60 months partly because – and Judge Hicks says in the record, I'm not sure what he bases this on, but he says, I assume that's partly because you were also about to get sentenced for the same fraud in the central district of California or eastern district of California, and that judge is probably going to give you a concurrent sentence. So the Florida Federal Court went higher. So he served 60 months on two Federal convictions for this exact same kind of fraud, and he gets out, and less than two weeks later, he is filing fraudulent documents, forging signatures, making up names, and doing the same fraud on some of the same victim companies. These were invulnerable individuals, as I recall, right? Actually, we agreed at sentencing that the vulnerable victim enhancement did not apply. Okay. Because the actual victim of the crime was the corporation, were these corporation entities. Now, in most of these cases, these were one person or family or closely held corporations. So – and – but the – so the PSR had actually – I believe the PSR had recommended a vulnerable victim enhancement, because some of these were elderly folks who had these mineral leases, and that was their primary source of income. But we agreed at sentencing that because, in fact, the victim was the corporation, not the individual, that that vulnerable victim enhancement was not appropriate and the judge did not apply it. So this is in the 3553A, the mistakes, if any, are in the 3553A, in effecting the 3553A determination. Yes. Is that right?  And do you agree that the government has a burden of proving by preponderance of the evidence the relevant facts as in the guidelines? Because I haven't seen a case that held that. What do you think is the burden of proof on the government? I think that when the defendant objects to a statement in the PSR, a factual assertion in the PSR, the government has the burden of proving that that fact is true by preponderance of the evidence. And there were some – and there were – I mean, there are two cases here. I mean, I do think that his essential confession that the reason he committed this crime was because he needed money to pay the restitution. I do think the Court could properly rely on that. I don't think it matters what bank the check was drawn from. Money is fungible, and, you know, money gets paid, so – or gets transferred around. So for that one. But, you know, we had evidence that the defendant, while he was in prison in Florida, continued to receive royalty payments on these fraudulent claims that were the basis of that Florida conviction. You're relying on the statement by the U.S. Attorney. Is that right? By the Financial Litigation Unit in the Northern District of Florida. And was that proper for the district court to rely on, and did that carry the government's burden on those points? I think it did, partly because – well, for two reasons. I mean, the Financial Litigation Unit is sort of the unit within the U.S. Attorney's Office that's responsible for tracking assets to collect assets to pay restitution. So they make these court-ordered status reports to the court. And when an officer of the court files a status report with the court with information, I think the district court is entitled to credit that. I mean, you know, Federal law says that no limitations may be put on information that the district court can receive and consider when imposing a sentence. And so if Judge Hicks decides that this is worthy of his consideration, I don't think that that is problematic. But with respect to one, I mean, so we had information that he had received some royalty payments while he was in prison. I think they said over eight months he received over $10,000 a month. But the statement in the PSR that they objected to was that he received approximately $2,000 annually in royalty payments while he was in prison. And we did not provide the court with evidence of that. So while there was evidence that he retained some, I think that that factual statement in the PSR that he received $200,000 a year, I mean, I just have to concede. But your position, I gather, is that the district court would have been aware that that was not substantiated and in making his determination had that in mind. Well, either he would have been aware because he had the evidence that we did provide and that's the evidence that we gave him. Or secondly, at the end of the day, it's just a misstatement in the PSR. And now we come back to, well, what do you do? I mean, what do you do if there's a misstatement in the PSR? And what Cruz-Gramajo, this Court, citing Williams, the Supreme Court, said, is that remand is not necessary when we know from a review of the record that it wouldn't affect the sentence. Be harmless. I'm sorry? Harmless. Harmless error. So in Munoz-Camarena, which was a guidelines error, it was error calculating, and we said it's rare that a guidelines calculation error would be harmless because we don't know what the district court would have done had it known the proper range. Is it different in the 355-3A? I think it is, because especially when – actually, here's the thing. If these – I think there are two statements that the government didn't provide sufficient evidence at sentencing for them to stay in. If these two sentences, if the Court had just calculated it, said I'm adopting the PSR and I'm overruling your objections and the guideline range is 24 to 30, but in light of all of this, I'm sentencing you to 90, and we don't know what all of this means. I mean, maybe in that case, well, maybe he was relying – you know, who knows how much weight he gave to these statements, if any? Who knows? Maybe we have to send it back and find out. That might be a case where remand is appropriate. But here, we've got the district court judge going, stating it simply, the criminal conduct committed by this defendant commenced immediately upon his release. He literally hit the ground running. I've never witnessed this before. Page after page after page, we know why the judge imposed the sentence that he did. Okay. Thank you. Okay. We have a little rebuttal time here. Or are there pro bono counsel today? I just have a couple of points. Opposing counsel is very confident that the judge would impose the same sentence on remand, and I don't think we can be so sanguine. The restitution was very – the question of restitution, the defendant's allegations that he only paid a minimal amount of restitution on release, how – where the restitution came from, where it was going, this was important to the judge. This was not – you know, if the judge hadn't mentioned it, I think her argument would be stronger. But the judge did specifically mention it, and I think that takes this case out of common sense. I agree. Your opposing counsel, in effect, confessed, I think she said, three likely errors. Yes. Let's assume that that's correct. Is harmless error review the standard that we have here? I think it is, because what we don't – it's funny, because if we had a clear violation of Rule 32 in terms of the failure to make findings, we'd have a mandatory remand. But here the judge made findings. He just made clearly erroneous findings. So I can't – I mean, that – so I do believe, yes, harmless error is the correct standard. Okay. And with that, I'm willing to submit. Thank you both for your usual fine presentations. We thank you. The case just argued is submitted.
judges: Wallace, Smith, Ikuta